779 So.2d 771 (2000)
STATE of Louisiana, Appellee,
v.
Robert Glen RICHARDSON and Ontario De'Wan Smith, Appellants.
No. 33,272-KA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2000.
*774 Murphy Bell, Jr., Baton Rouge, Counsel for Appellants.
Richard Ieyoub, Attorney General, Robert W. "Bob" Levy, District Attorney, Clifford R. Strider, III, Assistant District Attorney, Counsel for Appellee.
Before BROWN, CARAWAY and KOSTELKA, JJ.
CARAWAY, J.
Two defendants were tried by jury and convicted of armed robbery, a violation of La. R.S. 14:64. Defendants assign numerous errors of the trial court. For the following reasons, we affirm their convictions.

Facts
The employees of Shreveport Credit Union's Grambling Branch were victims of an armed robbery on the morning of September 16, 1997. During the robbery, Joyce Bowden (the supervising manager), Mary Kelly (the loan officer), and Jeanette Amos and Bobby Traylor (the tellers), were present. Bowden and Kelly were in their offices at the front of the credit union when the robbery began, Amos was in the copy room toward the back and Traylor was standing at the teller station near the vault. Traylor saw two men stooping and coming down the sidewalk. The first man had on a mask. She went into the copy room and told Amos they were about to be robbed. Amos dialed 911 to report a robbery in progress.
Thereafter the robbery ensued, and cash was taken from the credit union at gun point. Although the credit union's employees were unable to see the faces of the *775 robbers, they did give other descriptions which linked the defendants to the crime.
At 9:05 a.m., the Grambling Police Department received an armed robbery in progress call to which several officers responded. Since the police station was less than a mile from the credit union, the officers arrived at the scene in less than a minute where they encountered Bowden outside the building.
While Officer Steve Jackson spoke to Bowden outside, Officer Carl Terry chased the men on foot, running between the credit union and the car wash next door. He radioed Officer Jackson for a description of the suspects. He saw two men running fast, one in front of the other. The one closest to him wore a white tee shirt and blue jean overalls and carried a red bag. The other had on a black tee shirt and black shorts. As Officer Terry followed, the man in the overalls bent down and apparently fired a gun. Officer Terry stopped and returned fire; when no return fire was received, he again started chasing the men as they ran into the woods.
A third officer, Larry Moss, encountered one of the bank robbers near his police car north of the credit union and arrested him. Officer Terry came out of the woods to see Officer Moss handcuffing the man in the black tee shirt and shorts. This suspect had a blue bag. The officers later identified him at trial as defendant Robert Glen Richardson (Richardson).
Upon Officer Terry's return to where the men had entered the woods, he found a red bag. He then hollered for the canine units. Shortly afterwards, someone called back from the woods, asking if the dogs had been called. When Officer Terry said yes, the other man, who was apparently fearful of dogs, came out of the woods at the same spot where the red bag had been dropped. He was described as the black male in a white tee shirt and blue jean overalls and subsequently identified at trial as defendant Ontario De'Wan Smith (Smith).
Both defendants were interviewed by the FBI at the Grambling Police Station. Richardson's statement described cash flow problems from his men's clothing store. He furnished a handwritten statement. Smith admitted his participation in the armed robbery during the interview and in his statement. Smith corroborated Richardson's account of how the robbery transpired.
FBI agents investigated the crime scene and interviewed witnesses. The lower ledge of the teller station was broken during the robbery. A shoe print lifted from the counter had the same shape and tread design as the tennis shoes Richardson was wearing when he was arrested. A total of $5,134.95 was missing from the teller drawer; this included bait money, which is photocopied and recorded. A knife was also left on Bowden's desk.
The red bag contained clothing, a cap, cloth gloves, two cans of mace, duct tape and infants' socks. Latex gloves were inside the cloth gloves. The blue bag had fatigues, binoculars, a beeper and mobile phone, a cap, a latex glove, a mask, a box of bullets, an automatic pistol and clip, and the same currency as the bait money. Smith's wallet was in a side pocket of the blue bag; the wallet contained Smith's driver's license, social security card and other cards.
Both Smith and Richardson denied any criminal activity at trial and testified as to their respective alibis. A jury convicted both of armed robbery. Richardson was sentenced to 60 years at hard labor without benefit of probation, parole or suspension of sentence. Smith was sentenced to 45 years at hard labor without benefit of probation, parole or suspension of sentence.

Discussion

Denial of Defendants' Challenges for Cause
The defendants complain of the trial court's denial of their challenges for cause *776 regarding two prospective jurors. More specifically, defendants claim that their challenge for cause should have been granted with respect to juror Smith, because she was a former client of the district attorney. Furthermore, the defense argues that juror Dick should have been removed for cause due to her prior experience with a robbery. Each defendant used all twelve of his peremptory challenges.
In order for a defendant to prove reversible error warranting reversal of both his conviction and sentence, he need only show the following: (1) erroneous denial of a challenge for cause; and (2) use of all his peremptory challenges. State v. Hart, 96-0679 (La.3/07/97) 691 So.2d 651, and cases cited therein. See also State v. Divers, 94-0756 (La.9/5/96), 681 So.2d 320, cert. denied, 520 U.S. 1182, 117 S.Ct. 1461, 137 L.Ed.2d 564 (1997); State v. Lee, 559 So.2d 1310 (La.1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991).
La.C.Cr.P. art. 797 provides in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
* * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court.
This court has held that a trial court is vested with broad discretion in ruling on challenges for cause, and its ruling will be reversed only when a review of the entire voir dire reveals that the court abused its discretion. State v. Ellis, 28,282 (La. App.2d Cir.6/26/96), 677 So.2d 617, writ denied, 96-1991 (La.2/21/97), 688 So.2d 521, citing State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683. Also see: State v. Brown, 496 So.2d 261 (La.1986); State v. Walker, 577 So.2d 770 (La.App. 2d Cir.), writ denied, 581 So.2d 704 (La.1991); State v. Jackson, 548 So.2d 57 (La.App. 3d Cir.1989).
A refusal by a trial judge to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called "rehabilitation"), the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Cross, supra; State v. Ellis, supra.
As Chief Justice Calogero stated in State v. Lee, supra, at 1318:
When a juror expresses a predisposition as to the outcome of a trial [or in this case, as to a particular sentence], a challenge for cause should be granted. Yet, if after subsequent questioning the juror exhibits the ability to disregard previous views and make a decision based on the evidence presented at trial, the challenge is properly denied. When assessing whether a challenge for cause should be granted, the trial judge must look at the juror's responses during her entire testimony, not just "correct", isolated answers, or, for that matter, "incorrect", isolated answers. (Citations omitted.)
The trial judge must grant a cause challenge "even when a prospective juror *777 declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied." State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1991).
Potential juror Smith was a former client of the district attorney. The defense argues that the trial court's denial of this challenge for cause forced the defense to use a peremptory challenge on juror Smith. Juror Smith indicated during voir dire that she knew Mr. Levy, the district attorney, and the following colloquy occurred:
Q. All right, And how do you know him?
A. In 1988, latter part of '88 and beginning of '89, he was my attorney for an automobile accident.
Q. In 1989?
A. Right.
Q. Had he represented you previous to that time?
A. No.
Q. All right. Has he represented you since that time?
A. No.
Q. And was there anywas there a lawsuit filed?
A. Yes, there was.
Q. Did you go to court on it?
A. No.
Q. Was there a settlement effected?
A. Yes, sir.
Q. And that waswas the settlement in 1989?
A. That's correct.
Q. So that's been approximately ten years ago, is that correct?
A. That's correct.
Q. All right. Would your relationship with Mr. Levy in any way affect your ability to be fair and impartial in this case?
A. Absolutely not.
Along with the other panel members, juror Smith also answered that she could follow the trial court's instructions as to the law and apply the appropriate burden of proof.
In rejecting the defense challenge for cause, the trial court noted that no ongoing relationship existed between Smith and Levy, and that Smith clearly stated that the relationship would not affect her deliberations. The trial court further noted its own observation that Smith appeared to be very credible.
The fact that a prospective juror is acquainted with a party named in La. C.Cr.P. art. 797(3) is not in itself grounds for a challenge for cause. The facts must reasonably lead to the conclusion that the relationship would influence the juror in arriving at a verdict. State v. Mills, 505 So.2d 933 (La.App. 2d Cir.), writ denied, 508 So.2d 65 (La.1987). In State v. Lee, supra, the Supreme Court found the fact that a prospective juror had previously hired the district attorney for some unrelated legal business and that he might do so in the future was not a sufficient reason to grant a challenge for cause. The court stated only if the relationship would influence the juror in his decision should the challenge be granted. See also, State v. Flanagan, 31,497 (La.App.2d Cir.12/9/98), 724 So.2d 817 (where this court held that the trial judge was correct to deny the challenge for cause, even though the prospective juror was a client of a partner in the prosecutor's law firm).
After carefully reviewing Smith's testimony and in view of the jurisprudence, we conclude that the trial court did not abuse its wide discretion in finding her to be impartial, and in finding that her past relationship with the district attorney would not influence her in arriving at a verdict. This argument is therefore without merit.
The defense next alleges that it was required to use a peremptory challenge to remove potential juror Dick when *778 its challenge for cause was overruled. Citing La.C.Cr.P. art. 797(3), defendants assert that juror Dick indicated that she may not be impartial due to her previous experience with an armed robbery.
During juror screening, the trial court asked the prospective jurors whether they or someone close to them had ever been a crime victim. Dick raised her hand, and the following transpired:
Q. Anyone else on the front row? Let's see, Ms. Dick. Did you raise your hand?
A. Yes. I was at the bank when we had a robbery on West California.
Q. All right.
A. I was manager of all the tellers, and that's the only thing.
Q. All right. And how long ago has that been?
A. Probably in '81, '80 or '81. Can't remember which year, but it wasI was at the main office, but the tellers were out there. I wasn't in the building, but I was manager of the tellers.
Q. All right. So you were not at the location when the robbery occurred?
A. I was not at the location.
Q. All right. Would that having occurred in any way affect your ability to be fair and impartial or affect your deliberations in any way?
A. Possible.
After this colloquy, the trial court continued to question the entire panel. Dick was part of the same jury panel as juror Smith, and answered affirmatively to the same questions indicating that she was otherwise qualified to serve as a juror. The state then questioned Dick regarding her prior experience with an armed robbery. She related that the robbery occurred approximately 18 years ago while she was the teller manager for all of the bank branches. Her office was located downtown. Dick was not present at the bank branch when the robbery occurred, and she did not go to the branch immediately after the robbery. She did speak with some of the tellers after the incident, and stated that the tellers involved in the armed robbery were very upset and frightened. When further questioned by the state regarding whether her experience would affect her fairness as a juror in the instant case, Dick stated that her only concern was for the victims. She acknowledged that she could follow the law and evidence. Dick stated that she could be a fair and impartial juror because she did not know the victims or the defendants involved in this case.
Additionally, when the trial court asked the prospective jury panel if any of them knew any of the persons involved in the prosecution or defense of the case, Dick acknowledged that she had been a bank witness in a check forgery case prosecuted by the district attorney, Mr. Levy. She stated that her past interaction with Levy as a witness would not in any way affect her ability to be fair and impartial.
In denying the challenge, the trial court stated that Dick's responses to questions from both the state and the defense clearly indicated that she would decide this case on the merits, particularly in light of the fact that she did not know the victims. The trial court also noted that Dick gave no indication that her work with law enforcement personnel would affect her in any way. The trial court observed her demeanor and was satisfied that she could be a fair and impartial juror.
The declaration of an otherwise fair and impartial juror that she was previously the victim of a crime similar to that which the defendant stands charged does not render her incompetent to serve. State v. Collins, 546 So.2d 1246 (La.App. 1st Cir. 1989), writ denied, 558 So.2d 599 (La. 1990). Also, it was not error to refuse to excuse for cause a prospective juror who had been the victim of a robbery when questioning shows that the juror could be impartial. State v. Demouchet, 353 So.2d 1025 (La.1977); State v. Henderson, 571 *779 So.2d 770 (La.App. 2d Cir.1990). Furthermore, cases have upheld the denial of challenges for cause of prospective jurors whose relatives have been crime victims when the juror states that he or she would be fair and impartial and not prejudiced against the defendant. State v. Thom, 615 So.2d 355, 340 (La.App. 5th Cir.1993); State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, rehearing denied, certiorari denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997).
Dick's answers clearly support the trial court's conclusion that her past crime experience with an armed robbery and her experience as a prosecution witness would not interfere with her ability to act impartially. The record does not show an abuse of the trial court's discretion in denying the defendants' challenge for cause as to Ms. Dick. This argument is without merit.
Lastly, the defense makes general reference to "several" other potential jurors who had relationships with persons in the district attorney's office. However, the defense has not given the names of these persons or record page number references regarding their answers during voir dire.
Insufficiently briefed issues are not considered on appellate review, State v. Texada, 99-1009 (La.App. 3d Cir.2/2/00), 756 So.2d 463, and assignments of error which are neither briefed nor argued are considered abandoned. State v. Easter, 32,940 (La.App.2d Cir.4/7/00), 756 So.2d 703. Accordingly, this claim is considered abandoned.

Motion to Suppress the Defendants' Confessions
The defense argues that the defendants' confessions should have been suppressed. It contends that the state did not meet its burden of proving that the confessions were free and voluntary under La. R.S. 15:451,[1] and that the defendants voluntarily waived Miranda rights. The defendants testified at trial that, prior to signing their written confessions, numerous threats were made regarding harsh sentences and the arrest of Richardson's wife (who is also Smith's aunt). Defendants also contend that they were denied requested counsel during interrogations.
The state asserts that F.B.I. agents advised each defendant of his Miranda rights post arrest and that each defendant indicated his understanding and waiver thereof. The state notes that each defendant gave oral and written statements to the F.B.I. agents, which statements were introduced into evidence at trial. The state contends that the only evidence in the record to support the defense claim that each defendant requested an attorney before giving a statement is each defendant's testimony. The alleged threats were specifically denied by the officers at trial.
Two pretrial hearings on defendants' motions to suppress inculpatory statements and physical evidence were held. The trial court denied the pretrial motions.
Generally, before a confession may be admitted into evidence, the state has the burden of affirmatively showing that it was made freely and voluntarily and not under the influence of fear, duress, intimidation, menace, threats, inducements, or promises. La. R.S. 15:451; La. C.Cr.P. art. 703; State v. Simmons, 443 So.2d 512 (La.1983); State v. West, 408 So.2d 1302 (La.1982); State v. Dewey, 408 So.2d 1255 (La.1982). The state must specifically rebut a defendant's allegations of misconduct. State v. Gradley, 97-0641 (La.5/19/98), 745 So.2d 1160; State v. Vessell, 450 So.2d 938 (La.1984). Furthermore, if the statement was made during *780 custodial interrogation, the state must show that the defendant was advised of his constitutional rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Petterway, 403 So.2d 1157 (La.1981); State v. Sonnier, 379 So.2d 1336 (La.1979).
The admissibility of a confession is a question for the trial judge, whose conclusions on the credibility and weight of testimony relating to the voluntariness of a confession for the purpose of admissibility should not be overturned on appeal unless they are not supported by the evidence. State v. Jackson, 381 So.2d 485 (La.1980); State v. Thibodeaux, 98-1673 (La.9/08/99), 750 So.2d 916, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000).
At the first hearing on the motion to suppress, Agent Harry Deal testified as to circumstances surrounding the initial interview with Richardson and Smith. Agent Deal stated that both defendants were advised of their Miranda rights, and specifically denied that they ever requested to exercise their right to counsel before speaking with the agents. Agent Deal stated that both defendants appeared to have capacity to understand and waive their Miranda rights, and that both defendants made the inculpatory statements freely and voluntarily.
Agent Robert Robichaud was also present during the defendants' interviews. His testimony corroborated Agent Deal's testimony. Agent Robichaud specifically recalled that neither defendant requested to speak with counsel prior to giving his statements. The waiver of rights forms, signed by both defendants, were introduced into evidence at the hearing.
At the second hearing on the motion to suppress, Officer Moss testified that after arresting Richardson, he advised Richardson of his Miranda rights, and that Richardson apparently understood them. At the same hearing, Richardson testified that he was not read his Miranda rights immediately upon arrest, but advised so only after the police chief instructed Officer Moss to do so. Richardson stated that after Officer Moss read him his rights, he was questioned about being in Grambling. He claims that he requested an attorney at that time.
With respect to Smith's motion to suppress, Officer Terry testified that he advised Smith of his Miranda rights, to which Smith indicated his understanding. Officer Terry then placed Smith in a deputy sheriff's vehicle, and transported him to the police station. At the hearing, Smith testified that he requested an attorney after Officer Terry advised him of his Miranda rights.
After a careful review of the record, we find that the trial court did not abuse its discretion by finding that the state affirmatively showed defendants' statements were free and voluntary and were not the result of fear, duress, intimidation, menace, threats, inducements, or promises. Further, the state showed each defendant was advised of his constitutional rights before any statement was taken. Finally, the state specifically rebutted allegations of misconduct regarding alleged threats, coercion and alleged requests for representation. Accordingly, the trial court did not abuse its discretion by denying the motion to suppress defendants' inculpatory statements. The assignment of error is without merit.

Evidentiary Issues
By this assignment of error, defendants claim that the trial court erred by failing to exclude credit union records of accounts held by defendant Richardson and his wife, even though not furnished to the defense during discovery. Defendants claim they were prejudiced because the records gave the impression that Richardson and his wife were in financial trouble. The defense asserts that the state's failure to provide the credit union records pursuant to discovery lulled the defense into underestimating the strength of the state's case. Secondly, defendants complain of the trial *781 court's failure to allow into evidence pictures showing defendant Richardson with a black bag. The photograph was not allowed into evidence because it had not been produced pursuant to the state's discovery motion. Arguing that the picture was newly discovered evidence, the defense contends that the photograph was intended to rebut the state's claim that Richardson carried a blue bag. The defense asserts that the trial court's failure to allow the photograph to be introduced into evidence was prejudicial and constituted reversible error.
Generally, the discovery rules of the Louisiana Code of Criminal Procedure are intended to eliminate unwarranted prejudice which could arise from surprise testimony. State v. Selvage, 93-1435 (La. App. 1st Cir.10/7/94), 644 So.2d 745, writ denied, 94-2744 (La.3/10/95), 650 So.2d 1174.
Regarding documents and tangible objects, La.C.Cr.P. art. 718 provides in pertinent part that, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which are intended for use by the state as evidence at the trial. (Emphasis added)
Moreover, La. C.E. art. 611(E) provides in part that the state in a criminal prosecution shall have the right to rebut evidence adduced by its opponents. In State v. Amedee, 408 So.2d 1259 (La.1982), the concurring opinion noted that the district attorney was justified in the use of documents not previously intended for introduction as evidence at trial for rebuttal purposes. Also, the state is not required to furnish the defendant with a list of witnesses or statements made by witnesses or prospective witnesses. See La. C.Cr.P. art. 723; State v. Marks, 337 So.2d 1177 (La.1976); State v. Thomas, 306 So.2d 696 (La.1975).
At trial, Richardson testified that he and his wife were financially successful at the time of the armed robbery, and that his clothing store was thriving. This testimony was inconsistent with Richardson's inculpatory statements following his arrest. To rebut Richardson's testimony, the credit union manager testified as to Richardson's business account, its lack of funds and outstanding unpaid checks. Defendants' objections were overruled and the testimony was allowed.
Our review of the record supports the conclusion that the state was not required to produce the credit union records pursuant to Richardson's pre-trial discovery motions, because it did not intend to use them as evidence. La.C.Cr.P. art. 718. In fact, we note that the records were not actually introduced into evidence. Further, the state was not obligated to furnish the name of the witness who testified regarding Richardson's account. Testimony regarding the credit union account was properly allowed by the trial court as rebuttal to Richardson's self-serving testimony. La. C.E. art. 611(E).
Richardson complains that the trial court erred by failing to allow the introduction of photographic evidence. Objecting to the defense's attempt to introduce photographs of Richardson carrying a black bag, the state claimed such photographs were not produced in spite of its repeated discovery requests. The photographs were shown to the state the morning on which the defense planned to introduce them into evidence. The state successfully argued that late disclosure prohibited it from effective cross-examination regarding the circumstances surrounding the taking of the photographs. The defense argued that Richardson found pictures of himself carrying a black bag to prove that he owned one. The trial court noted its previous ruling that there was no evidence indicating a black bag existed. The trial court excluded the *782 photographs because they were not produced in compliance with proper discovery and prejudiced the state. The defense proffered the photographs.
Exclusion of the evidence is clearly allowed under La.C.Cr.P. art. 729.5.[2] Moreover, we find that the relevance of such unrelated photographs is extremely weak. The record supports the trial court's conclusion that the pictures were not produced by the defense despite the state's repeated requests. No prejudice to Richardson was shown as he was allowed to testify concerning the ownership and frequent use of a black bag. Because the defense failed to show an abuse of discretion or prejudice, a reversal of the trial court's ruling regarding the sanction imposed is unwarranted. State v. Selvage, supra.

Jury Tampering & Juror Misconduct
The defense's next three assignments deal with (i) alleged jury tampering which purportedly prejudiced Smith, (ii) the failure of the trial court to grant a mistrial after misconduct by jurors in visiting the crime scene, and (iii) the trial court's failure to remove the jurors who acted inappropriately. The defense notes that it moved for a mistrial twice, both of which motions were denied. Smith made the first request for a mistrial in response to notification by the court that Richardson and his wife had allegedly committed jury tampering by contacting jurors Atkins and Dyes. Both jurors were removed during trial and replaced by alternates. Smith argues that the circumstances surrounding the jury tampering prevented him from having a fair trial. He contends that the trial court's questioning of other jurors as to the extent of the alleged tampering, without informing them why they were being questioned, prejudicially affected their opinions of the defendants. The defense also notes that the removal of the two jurors altered the jury's make-up.
The second motion for a mistrial occurred after juror Allen admitted taking his wife to the crime scene and performing his own inspection. The defense argues that juror Allen's conduct denied both a fair trial. Other jurors also admitted driving by the credit union during the trial.
La.C.Cr.P. art. 775[3] provides for a mistrial when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial. A mistrial is a drastic remedy to be invoked only when the defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial. State v. Adams, 30,815 (La. App.2d Cir.6/24/98), 715 So.2d 118, writ *783 denied, 98-2031 (La.3/19/99), 739 So.2d 774; State v. Hattaway, 28,060 (La.App.2d Cir.5/8/96), 674 So.2d 380, writ denied, 96-1900 (La.1/10/97), 685 So.2d 141. Whether to grant or to deny a mistrial lies within the sound discretion of the trial court, and will not be disturbed absent a clear abuse of that discretion. State v. Adams, supra; State v. Hattaway, supra. In a criminal case, any private communication, contact or tampering directly or indirectly with a juror during a trial about the matter pending before the jury is deemed presumptively prejudicial. State v. Charles, 377 So.2d 344 (La.1979); State v. Barber, 30,019 (La.App.2d Cir.1/21/98), 706 So.2d 563, writ denied, 98-1353 (La.10/09/98), 726 So.2d 24; State v. McLemore, 26,106 (La. App.2d Cir.6/24/94), 640 So.2d 847, writ denied, 94-1908 (La.12/9/94), 647 So.2d 1107, cert. denied, 514 U.S. 1116, 115 S.Ct. 1974, 131 L.Ed.2d 863 (1995).
In State v. McLemore, supra, it was held that, even if the extrajudicial contact was presumptively prejudicial, the state sustained its burden of proving that it was harmless to defendant. In that case, the jurors involved in the communication were removed. When questioned individually, each remaining juror testified that they had no knowledge of the defendant's alleged contact with the two jurors. The evidence showed that the prohibited contact with the two jurors did not taint the jury's deliberations or prejudice the defendant. This court therefore found no error in the denial of defendant's motion for mistrial.
Juror misconduct is not grounds for an automatic mistrial; prejudice must also be established. State v. Ireland, 377 So.2d 299 (La.1979); State v. Day, 414 So.2d 349 (La.1982). The trial court has the discretion to use services of alternate jurors rather than to grant a mistrial upon proper finding that this is the best course of action. La.C.Cr.P. art. 789; State v. Womack (La.App. 2d Cir. 1991), 592 So.2d 872, writ denied, 600 So.2d 675 (La.1992).
This record shows that during trial, juror Dyes informed the court that she was visited the night before by Richardson, his wife (Sybil Fox) and their baby. Dyes stated that she told them that they should not be at her house and that they should leave. Dyes related that Fox wanted to show her evidence that they were not being allowed to use in court, and appealed to her sympathies as a mother concerning the fate of their baby. Fox indicated that she thought race was a factor in the defendants' prosecution. Fox tried to hug Dyes, and asked for her prayers. Dyes, who was frightened by the visit, locked her door and called for help on the telephone. When questioned by the court, Dyes denied any communication with the other jurors about the visit.
The trial court questioned the remaining jury members and two alternates in chambers about any extraneous contact or communication, in or out of the courtroom. Juror Atkins was the only other one who was contacted by Richardson and Fox. They went to Atkins' home with their two children and showed him some photographs of the crime scene and their clothing store.
Richardson testified at a hearing concerning these incidents, out of the presence of the jury. He denied having visited jurors Atkins and/or Dyes. He claimed that he was at the hospital in Shreveport that evening. The trial court nonetheless released the jurors in question and seated two alternates. During the hearing, defense counsel stated it had no objection to the two jurors being released. Later, the trial court, finding no prejudice, denied the defense motion for mistrial.
Although Richardson and Fox's communications with the two jurors at their homes were presumptively prejudicial, a mistrial was not required. La.C.Cr.P. art. 775; State v. Adams, supra. The two jurors involved were removed and the remaining jurors, when questioned individually, each testified that they had no knowledge *784 of any improper contact. The questioning was done in such a manner so as not to cause suspicion regarding the defendants. Thus, as in State v. McLemore, supra, the evidence shows that the unauthorized juror contact neither tainted the jury's deliberations nor prejudiced either defendant. The trial court did not abuse its discretion by employing the alternate jurors instead of granting a mistrial. La.C.Cr.P. art. 789; State v. Womack, supra.
Defendants next urge that the jurors' visits to the crime scene warranted a mistrial. In State v. Joseph, 463 So.2d 1014 (La.App. 3d Cir.), writ denied, 466 So.2d 471 (La.1985), the court held that the trial court did not err in refusing to declare a mistrial. During the Joseph trial, the court discovered that during a recess, four jurors viewed the car involved in the crime parked behind the courthouse. Instead of granting a mistrial, the trial court permitted the entire jury to view the car. Thus, the court determined that those who viewed the car could not have been improperly prejudiced or inflamed.
During the instant trial, the court learned that juror Allen made an independent visit to the crime scene. Allen was questioned by the trial court on the record, but out of the presence of the jury. He acknowledged visiting the crime scene, accompanied by his wife and children. Allen stated that he drove up, got out of his car and looked at the front of the building. He got back in his car, drove around the side of the building and then behind the car wash. As he pulled out from behind the car wash, he unexpectedly saw Richardson and Fox also standing outside the credit union building. Nevertheless, he testified that he had no contact with them. Allen also drove by the nearby church along routes described at trial by the officers. He was there for approximately five minutes. When asked if his deliberations would be influenced, Allen responded that the visit made more sense than the map used at trial and showed that the area was more congested. Otherwise, he stated that the independent visit would not change his mind. Allen admitted discussing the crime scene with his wife.
When Allen was asked whether he communicated his visit to the other jurors, he responded, "I have and they have to me, too. I mean not everybody but, yeah, I made the comment that I went out there Saturday." Allen stated that he did not tell the other jurors anything except that the area was more congested than it appeared on the map. He also heard another juror say "well I'm going out there."
After the state requested a group jury visit to the crime scene, and at defense counsel's request, the trial court interviewed Juror Allen in chambers. Allen informed the trial court that he had not learned anything new from participating in the group visit.
The trial court then asked the jurors as a whole, again off the record, if any of them had visited the crime scene on their own. Jurors Willis, Mamon and Funas responded affirmatively. These jurors knew of Allen's visit, but none recalled any discussion with other jurors about the crime scene's appearance. The three above-named jurors drove by the credit union and stayed in their vehicles. None of these jurors learned anything from their visits that they would not have learned during the group visit. Accordingly, the trial court denied defendants' motion for mistrial.
A review of these facts supports the rulings below. The trial court did not abuse its much discretion denying the defense's motion for mistrial because of the jurors' independent crime scene visits. The potentially prejudicial situation was cured when the jury visited the crime scene as a group. The trial court carefully questioned each juror and was satisfied that nothing new had been learned during the independent crime scene visits that had not been revealed by the subsequent jury crime scene visit. Since the viewing *785 experience was essentially the same for all of the jurors, the defense was not prejudiced. State v. Joseph, supra. Such juror conduct, even if considered as "misconduct," is not grounds for a mistrial without a finding of prejudice. State v. Ireland, supra; State v. Day, supra. The arguments regarding mistrial are therefore without merit.

Denial of Smith's Motion to Sever
After learning of Richardson's alleged jury tampering, the defense moved to sever the cases. The trial court denied Smith's motion. The defense argues that the severance should have been granted because Richardson's alleged jury tampering precipitated a conflict of interest between the co-defendants, preventing Smith from receiving a fair trial.
First, it is noted that the defendants were jointly charged, and the defense moved for a "dual trial." After the state assured the defense that it did not intend to file a motion to sever, the defense withdrew its motion for a dual trial.
La.C.Cr.P. art. 704 provides in part that defendants indicted jointly shall be tried jointly unless the state elects to try them separately; or the court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance. A determination as to whether to grant or deny a severance rests within the sound discretion of the trial court. A ruling on a severance motion will not be reversed on appeal absent a clear showing that the trial court abused its discretion. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Huff 27,212 (La.App.2d Cir.8/23/95), 660 So.2d 529, writ denied, 96-0212 (La.5/1/97), 693 So.2d 754; State v. Dukes, 609 So.2d 1144 (La.App. 2d Cir.1992), writ denied, 93-1421 (La.12/15/95), 664 So.2d 435.
Here, the defendants were jointly charged, and the state did not elect to try them separately. Justice did not require that the trial be severed. Smith was not prejudiced by his co-defendant's jury tampering. As noted above, the two jurors involved in the extrajudicial communication were removed. When questioned individually, all of the remaining jurors testified they had no knowledge of any juror contact. Thus, as in State v. McLemore, supra, the evidence shows that the unauthorized contact with the two jurors did not taint jury deliberations or prejudice either defendant. The trial court's denial of defense's motion for severance was not an abuse of discretion. State v. Prudholm, supra; State v. Huff, supra; State v. Dukes, supra.

Prior Crimes Evidence
The defense argues in its last three assignments of error that the trial court should not have allowed evidence of prior convictions of Smith and Richardson into evidence based upon the proof presented. In particular, the defense contends that one of Smith's alleged prior convictions was not a "conviction," because it should have been sealed after Smith's probation was completed.
By testifying at trial, a defendant subjects himself to cross-examination regarding his prior convictions for the limited purpose of impeaching his credibility. State v. Powell, 28,788 (La.App.2d Cir.11/01/96), 683 So.2d 1281, writ denied, 97-0092 (La.5/30/97), 694 So.2d 243. See also, State v. Taylor, 95,179 (La.App. 3d Cir.10/4/95), 663 So.2d 336. Regarding such impeachment, La. C.E. art. 609.1 provides in pertinent part:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, *786 an indictment, a prosecution, or an acquittal.
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible....
Prior to Smith's testifying, the trial court considered evidence and heard argument outside the jury's presence concerning a 1994 criminal prosecution against him in Missouri. The record of that proceeding reflected the entry of a guilty plea to first degree tampering, a Class C felony. The record further showed that the sentence imposed was suspended, and Smith was placed on probation. From this evidence, the trial court ruled, over Smith's objection, that the prior conviction could be used to impeach Smith in the event he testified.
On direct examination following this ruling, Smith testified that he had been on probation in Missouri for car tampering. On cross-examination, Smith acknowledged that his probation resulted from the entry of a guilty plea to a Class C felony.
Our review of the record supports affirmance of the trial court's ruling. Smith's argument that the criminal proceeding should have been "sealed" in Missouri is not supported by the law or the facts. The state readily accessed and produced the record of Missouri's criminal proceeding against defendant Smith.
The remaining two assignments of error concern evidence of Richardson's prior convictions, and the prosecution's reference to Smith as a convicted felon during trial. We first note that no contemporaneous objections were made for these alleged errors during trial. La.C.Cr.P. art. 841. A contemporaneous objection is necessary to preserve an error for appellate review. Moreover, defendants' brief neither identifies the state's improper actions by reference to the record nor briefs and argues these issues. Therefore, we consider the final assignments of error abandoned. State v. Easter, supra.

Conclusion
For the foregoing reasons, the defendants' convictions are affirmed.
AFFIRMED.
NOTES
[1] La. R.S. 15:451 states:

Before what purposes [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.
[2] Art. 729.5. Failure to comply; sanctions

A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
B. In addition to the sanctions authorized in Part A hereof, if at any time prior or subsequent to final disposition the court finds that either the state through the district attorney or assistant district attorney or the defendant or his counsel has willfully failed to comply with this Chapter or with an order issued pursuant to this Chapter, such failure shall be deemed to be a constructive contempt of court.
[3] La.C.Cr.P. art. 775 states in part:

A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
* * *
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.