Judgment rendered May 17, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,023-KA
No. 55,024-KA
No. 55,025-KA
No. 55,026-KA
No. 55,027-KA
No. 55,028-KA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

STACEY GLENN WILHITE                          Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court Nos. 236043, 236043A, 236043B,
236043C, 236043D, 236043E

Honorable Michael Nerren, Judge

* * * * *

WINSTON BERGERON, LLP                          Counsel for Appellant
By: Samuel H. Winston
    Evan J. Bergeron
    Jeigh Lynn Britton

J. SCHUYLER MARVIN                          Counsel for Appellee
District Attorney

ANDREW C. JACOBS
RICHARD R. RAY
Assistant District Attorneys

* * * * *

Before PITMAN, THOMPSON, and ELLENDER, JJ.

**THOMPSON, J.**

Stacey Wilhite was convicted by a unanimous jury of molestation and indecent behavior with several children. He was sentenced to a total of 67 years in prison at hard labor. On appeal, he does not assign as error the sufficiency of the evidence or excessive sentence. Instead, he argues that the trial court erred in failing to grant a motion for change of venue and then a motion for mistrial on that issue. He also argues that the trial court improperly allowed the use of impeachment evidence against his wife during trial and various *Brady* violations. For the foregoing reasons, we affirm his convictions and sentences.

### FACTS AND PROCEDURAL HISTORY

In 2020, Stacey Wilhite ("Wilhite") was accused of molestation and indecent behavior with a juvenile by several children. He was subsequently charged with one count of molestation of a juvenile under 13 in violation of La. R.S. 14:81.2, one count of attempted molestation of a juvenile under 13 in violation of La. R.S. 14:81.2, six counts of indecent behavior with a juvenile under 13 in violation of La. R.S. 14:81, and one count of indecent behavior with a juvenile in violation of La. R.S. 14:81. The charges for each child victim were given a separate case number, but all of the cases were tried together.

The first victim, E.B., who was born on November 28, 2007, disclosed to her mother in June, 2020 that sometime in 2014 a man with dark hair allowed her to use the bathroom outside and wiped her after a golf cart ride. The man took her inside his house and touched her, pulled down his pants and asked that she touch him. E.B.'s mother took her to the police station to report the incident, and E.B. had an interview with the

Gingerbread House on June 29, 2020. E.B.'s mother posted several times on Facebook about the incident and several of the other parents were notified of the abuse of their children from her posts.

Sometime in 2014, the second victim, L.S., who was born on December 10, 2003, went to Wilhite's house for a sleepover with Wilhite's son, P.W. L.S. testified that while he was showering, Wilhite entered the shower naked and sat down on the shower bench. He pulled L.S. onto his lap and began to wash him. L.S. got up and left the shower. Later that night, L.S. was sleeping with P.W. in his bed when Wilhite came in and asked P.W. to go sleep in another room. L.S. interrupted him and said he had a headache and wanted to go home.

In 2016, the third victim, R.S., who was born on January 9, 2006, spent the night at P.W.'s house for a sleepover. R.S. stated he was sleeping in the living room when Wilhite came downstairs and told his son to go sleep somewhere else. Wilhite began tickling R.S. and moved his hands down toward his pants. R.S. testified that he moved over, and Wilhite did not touch his private area. Wilhite then went upstairs and spent the night there.

Sometime in 2019, the fourth victim, E.S., who was born on July 15, 2010, and P.W. were playing with a remote-control car at Wilhite's house. E.S. got dirty from the mud, and Wilhite sprayed her off with the hose. E.S. testified that he took her to the pool house and asked to pull her shirt up, then pulled her pants down and rubbed her vagina.

The fifth victim, A.L., is Wilhite's stepdaughter and was born on January 10, 2005. In the summer of 2017, on a vacation to Florida, Wilhite put his hand on her thigh, near her shorts line, while they were in a go-cart

2

together. On a family trip in the summer of 2018, while having a pillow fight, A.L. testified that Wilhite grabbed her breast and upper chest area for a few seconds. At the end of 2018, when A.L. was in 8th grade, she saw Wilhite in the mirror in the bathroom while she was taking a bath. She did not know whether he could see her in the bath. In the summer of 2019, at a pool party, A.L. was swimming across the pool while Wilhite was sitting at the deep end of the pool. A.L. testified she could see him doing "something weird" with his bathing suit shorts but she did not see him expose himself.

Finally, K.A., the sixth victim, who was born on May 18, 2002, testified that when she was nine, Wilhite touched her on the vagina over her clothes when she was playing with P.W. She also testified that she saw him naked after showering once and he motioned for her to go with him. She testified that while she was taking a nap at Wilhite's house, he put his penis near her face. On another occasion, she testified that he had her rub up against him while she was on top and he was lying on the floor. She testified that neither of them was wearing bottoms when this incident occurred. She testified that this happened on more than one occasion.

Several months before his trial, Wilhite filed a motion to change venue, pursuant to La. C. Cr. P. art. 622, arguing that it was not possible for him to receive a fair trial in Bossier Parish due to pretrial publicity. The trial court stated that it would rule on the motion after jury selection, as the *voir dire* of the potential jurors could provide insight on the issue.

During jury selection, the trial court learned of inappropriate communication between a prospective juror, Ms. Harris, and an employee of the district attorney's office. At that point in jury selection, several prospective jurors, including the juror in question, had been agreed upon by

3

the parties, but the entire jury had not yet been seated. After questioning by the trial court, Ms. Harris admitted to texting with a friend who worked in the D.A.'s office, although she was not entirely truthful about the extent of the texting until the trial court looked at her phone. She also admitted that she asked her fellow prospective jurors, out of the presence of the court, if they had been asked if they knew anyone in law enforcement or the D.A.'s office.

The court dismissed Ms. Harris as a juror, and called the remaining prospective jurors individually into court to question them about whether they had had contact with anyone related to the case, whether Ms. Harris had asked them about whether they knew anyone in law enforcement or the D.A.'s office, and whether they believed they could be impartial. Wilhite's defense counsel agreed to this course of action by the trial court. After individual questioning all of the jurors, the trial court confirmed that Ms. Harris had only asked the one question that she related to the court. During questioning, the trial court also found that one other prospective juror mentioned that she believed Wilhite was a realtor to some of the other jurors and that others had a conversation about other, similar cases in Bossier Parish. However, the trial court reiterated that each juror confirmed that nothing that was said out of the presence of the court would affect their ability to be fair and impartial. Defense counsel moved for a mistrial, which was denied by the trial court. The trial court noted that each side still had juror challenges remaining, if they wished to use them.

Jury selection continued until the prospective jury panel had been selected. At the end of the jury selection, the trial court denied Wilhite's motion to change venue and noted that defense counsel did not use two of its

4

peremptory challenges. No additional challenges for cause were raised about any jurors whom the court questioned about Ms. Harris's comments.

Trial began on January 24, 2022. During trial, the defendant's wife, Michele Wilhite ("Michele"), testified on his behalf about their marriage and her observations of the actions of the defendant. On cross-examination, the state asked Michele if she had ever been convicted of a felony, and she replied no. The state then presented evidence that she had pled guilty and was sentenced for felony access device fraud on June 16, 2009. She was sentenced to three years of hard labor, suspended, and placed on three years of active supervised probation in order to make restitution of no less than $20,231.51 within the first ten months of that probation. The defense moved for a mistrial pursuant to La. C. Cr. P. art. 973, the effects of an expunged record for arrest or conviction. The trial court held that there was no acquittal in the record, only deferment, and as such, the evidence was admissible. The trial court denied the motion for a mistrial.

On February 2, 2022, the jury returned guilty verdicts to one count of molestation of a juvenile under the age of 13, one count of attempted molestation of a juvenile under the age of 13, six counts of indecent behavior with a juvenile under 13, and one count of attempted indecent behavior with a juvenile. On May 13, 2022, Wilhite was sentenced to serve a total of 67 years at hard labor with the first two years without benefit of probation, parole, or suspension of sentence. Wilhite now appeals.

## DISCUSSION

Wilhite asserts three assignments of error.

**First Assignment of Error: The district court abused its discretion in denying both the appellant's motion to change venue and the motion for mistrial regarding the same.**

**Change of Venue**

On August 27, 2021, Wilhite filed a motion for change of venue, asserting that he could not obtain a fair and impartial trial in Bossier Parish due to the local press coverage, social media, tainting of the jury pool, and prejudice of the community at large. Argument and a ruling on the motion were deferred until the jury was chosen. On appeal, Wilhite argues that the trial court erred in denying his motion for change of venue and the motion for mistrial regarding the same.

The grounds for a change of venue are set forth in La. C. Cr. P. art. 622, which states:

> A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trail cannot be obtained in the parish where the prosecution is pending.
>
> In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.

A defendant has the burden to establish that he cannot obtain a fair trial in the current parish by showing more than just the public's general knowledge or familiarity with the facts of the case to be entitled to a change of venue. *State v. Magee*, 11-0574 (La. 9/28/12), 103 So. 3d 285, *cert. denied*, 571 U.S. 830, 134 S. Ct. 56, 187 L. Ed. 2d 49 (2013); *State v. Hust*, 51,015 (La. App. 2 Cir. 1/11/17), 214 So. 3d 174, *writ denied*, 17-0352 (La. 11/17/17), 229 So. 3d 928. A defendant is not entitled to a jury entirely ignorant of his case and cannot prevail on a motion for change of venue simply by showing a general level of public awareness about the crime.

6

Instead, he must show that there exists such prejudice in the collective mind of the community that a fair trial is impossible. *Magee*, *supra*; *Hust*, *supra*. It is only in exceptional circumstances, such as the presence of a trial atmosphere that is utterly corrupted by press coverage or that is entirely lacking in solemnity and sobriety, that prejudice against a defendant may be presumed. *Magee*, *supra*.

The Louisiana Supreme Court has enumerated several factors to be considered to determine whether a change of venue is necessary. *State v. Bell*, 315 So. 2d 307 (La. 1975). They are: 1) the nature of pretrial publicity and the particular degree to which it has circulated in the community; 2) the connection of government officials with the release of the publicity; 3) the length of time between the dissemination of the publicity and the trial; 4) the severity and notoriety of the offense; 5) the area from which the jury is to be drawn; 6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant; and 7) any factors likely to affect the candor and veracity of the prospective jurors on *voir dire*.

In performing this review, courts must distinguish largely factual publicity from that which is invidious or inflammatory, as the two present real differences in the potential for prejudice. *Magee*, *supra*; *State v. Cope*, 48,739 (La. App. 2 Cir. 4/9/14), 137 So. 3d 151, *writ denied*, 14-1008 (La. 12/8/14), 153 So. 3d 440. While ultimately there is no bright line test for ascertaining the degree of prejudice existing in the collective mind of the community, the seven *Bell* factors help facilitate the inquiry. *Id*. In addition, courts have examined the number of jurors excused for cause for

having a fixed opinion as another gauge of whether prejudice exists in the public mind. *Id.*

The question of whether a defendant has made the requisite showing of actual prejudice is a question addressed to the district court's sound discretion, which will not be disturbed on appeal in the absence of a showing of error and abuse of discretion. *Magee*, *supra*.

In the present case, Wilhite filed a motion for change of venue that attached copies of Facebook pages as evidence of widespread publicity and the attitude of the community. The first attached exhibit was a page entitled "Justice for Victims of Stacey Wilhite," and purports to be collecting donations for T-shirts and posters made to hand out at a protest. The page appears to have raised $175 with a total of four donations, and there is no indication in the record that any T-shirts or posters were made or that a protest was ever accomplished. The next exhibit is a copy of a local news reporter's Facebook page, dated September 17, 2020, where he has published Wilhite's mug shots and a small report from Bossier police regarding Wilhite's arrests. The exhibit also includes four pages of Facebook comments on the article, some of which are inflammatory. The following eight exhibits were copies of Facebook posts from local news sources, linking to stories of Wilhite's arrest, all dated in either August, September, or October, 2020. While the articles themselves appear to provide factual information regarding Wilhite's arrests, the comments under the copies of the Facebook posts include inflammatory language.

The trial court deferred the ruling on the motion to change venue until after *voir dire*, stating that there was not enough evidence at that time to justify a change. *Voir dire* resulted in 34 prospective jurors and six alternate

8

jurors, all of whom were questioned by counsel. Seven prospective jurors and one alternate juror were excused for cause on the defense's motion. None of the jurors were excused due to an inability to be impartial because of media attention received by Wilhite. In fact, most jurors had little to no specific knowledge of Wilhite when questioned by the trial court. At the conclusion of *voir dire*, the defense accepted the jury and still had two peremptory strikes against potential jury members remaining.

A review of the record does not indicate an abuse of discretion by the trial court in its denial of the motion to transfer venue. While some of the comments on the Facebook articles are inflammatory, there is no indication that the people who commented on Facebook are representative of the Bossier Parish community. In fact, there is no indication that the people who commented on Facebook are even residents of Bossier Parish. The news articles and the comments were all made in 2020, more than a year and a half before the trial. The trial court noted that there was no indication of prejudice on the part of the specific jurors after questioning during *voir dire*. Moreover, at the conclusion of *voir dire*, the defense had two unused peremptory challenges. We find Wilhite's arguments on this matter to be unpersuasive.

**Mistrial**

Wilhite further argues that the trial court erred in denying his motion for mistrial after it was revealed that one of the prospective jurors had communicated with an employee of the district attorney's office, as described above.

La. C. Cr. P. art. 775 requires a mistrial on motion of the defense when "prejudicial conduct inside or outside the courtroom makes it

impossible for the defendant to receive a fair trial." Mistrial is a drastic remedy that is authorized only where substantial prejudice will otherwise result to the accused. *State v. Bell*, 51,312 (La. App. 2 Cir. 5/17/17), 222 So. 3d 79. The determination of whether actual prejudice has occurred lies with the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Id.*; *State v. Wilson*, 50,589 (La. App. 2 Cir. 5/18/16), 196 So. 3d 614, *writ denied*, 16-1102 (La. 5/12/17), 221 So. 3d 72. In a criminal case, any private communication, contact, or tampering directly or indirectly with a juror during a trial about the matter pending before the jury is deemed presumptively prejudicial. *State v. Charles*, 377 So. 2d 344 (La. 1979); *State v. Richardson*, 33,272 (La. App. 2 Cir. 11/1/00), 779 So. 2d 771, *writ denied*, 00-3295 (La. 10/26/01), 779 So. 2d 1151.

Juror misconduct is not grounds for an automatic mistrial; prejudice must also be established. *State v. Ireland*, 377 So. 2d 299 (La. 1979), *Richardson*, *supra*. The trial court has the discretion to use services of alternate jurors rather than to grant a mistrial upon proper finding that this is the best course of action. *Id.* This court has found that a mistrial was unnecessary when the trial court removes jurors involved in the improper communication and the remainder of the jurors are questioned and testify that they were unaware of the unauthorized communication. *See Richardson*, *supra*; *State v. McLemore*, 26,106 (La. App. 2 Cir. 6/24/94), 640 So. 2d 847, *writ denied*, 94-1908 (La. 12/9/94), 647 So. 2d 1107, *cert. denied*, 514 U.S. 1116, 115 S. Ct. 1974, 131 L. Ed. 2d 863 (1995).

In the present matter, the trial court did not abuse its discretion in refusing to grant a mistrial. The juror who was in contact with an employee of the district attorney's office was questioned on the record by the trial

court, with all counsel present. The trial court examined her text messages and removed her from the prospective juror pool.

The court then individually questioned all the remaining prospective jurors, including asking them about anything that was potentially said by the removed juror, whether they had interacted with any party or witnesses to this matter, and whether they believed they could be impartial. The questioning by the court was done in such a manner so as not to cause suspicion regarding the circumstances and was conducted in the presence of the state and defense counsel. The trial judge undertook detailed efforts to ensure the integrity of the jury selection process. The parties were ultimately able to seat the remainder of the jury from the jury pool. We again note that defense counsel did not use two of its remaining peremptory strikes. Considering this, the record shows that the unauthorized juror contact neither tainted the jurors nor prejudiced the defendant. The trial court did not abuse its discretion in denying the motion for a mistrial. This assignment of error is without merit.

**Second Assignment of Error: The district court erred when it improperly allowed the State to use an expunged offense to impeach a defense witness and failed to grant a mistrial as a result.**

Wilhite challenges the trial court's denial of his motion for a mistrial based on the testimony elicited from Wilhite's wife, Michele, at trial. Michele was asked if she had ever been convicted of a felony and testified that she had not. The state then presented evidence that she had pled guilty and was sentenced for felony access device fraud on June 16, 2009. Wilhite argues that Michele's conviction was expunged pursuant to La. C. Cr. P. art. 893, which states in pertinent part:

11

A. (1)(a) When it appears that the best interest of the public and of the defendant will be served, the court, after a first, second, or third conviction of a noncapital felony, may suspend, in whole or in part, the imposition or execution of either or both sentences, where suspension is allowed under the law, and in either or both cases place the defendant on probation under the supervision of the division of probation and parole.

\*\*\*

B. (3) When suspension is allowed under this Paragraph, the defendant shall be placed on probation under the supervision of the division of probation and parole. If the defendant has been sentenced to complete a specialty court program as provided in Subsubparagraph (2)(b) of this Paragraph, the defendant may be placed on probation under the supervision of a probation office, agency, or officer designated by the court, other than the division of probation and parole of the Department of Public Safety and Corrections. The period of probation shall be specified and shall not be more than three years, except as provided in Paragraph G of this Article. The suspended sentence shall be regarded as a sentence for the purpose of granting or denying a new trial or appeal.

C. If the sentence consists of both a fine and imprisonment, the court may impose the fine and suspend the sentence or place the defendant on probation as to the imprisonment.

D. Except as otherwise provided by law, the court shall not suspend a felony sentence after the defendant has begun to serve the sentence.

E. (1)(a) When it appears that the best interest of the public and of the defendant will be served, the court may defer, in whole or in part, the imposition of a sentence after conviction of a first offense noncapital felony under the conditions set forth in this Paragraph. When a conviction is entered under this Paragraph, the court may defer the imposition of sentence and place the defendant on probation under the supervision of the division of probation and parole.

\*\*\*

(2) Upon motion of the defendant, if the court finds at the conclusion of the probationary period that the probation of the defendant has been satisfactory, the court may set the conviction aside and dismiss the prosecution. The dismissal of the prosecution shall have the same effect as acquittal, except that the conviction may be considered as a first offense and provide the basis for subsequent prosecution of the party as a habitual offender except as provided in R.S. 15:529.1(C)(3). The conviction may be considered as a prior offense for purposes of any other law or laws relating to cumulation of

offenses. Dismissal under this Paragraph shall occur only twice with respect to any person.

La. C. Cr. P. art. 978 authorizes the expungement of a felony offense if the conviction was set aside and dismissed under Article 893(E), and Wilhite argues that Michele's conviction was deferred, expunged, and had the effect of an acquittal and should be treated as actual innocence. However, as noted by the trial court, there is no evidence of an acquittal in the record. The record contains evidence of a plea and conviction, a sentence that was suspended, probation, and then a reference to Article 893. The trial court found no evidence of an acquittal, much less actual innocence on the record.

Mistrial is a drastic remedy that is authorized only where substantial prejudice will otherwise result to the accused. *Bell*, 222 So. 3d at 79. The determination of whether actual prejudice has occurred lies with the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Id.*; *State v. Wilson*, 50,589 (La. App. 2 Cir. 5/18/16), 196 So. 3d 614, *writ denied*, 16-1102 (La. 5/12/17), 221 So. 3d 72. We cannot say it was an abuse of discretion for the trial court to deny the motion for mistrial. The parties admit that it is unclear what subsection of Article 893 was used for Michele's expungement and there is no evidence of an acquittal in the record. Moreover, it is unclear how this testimony makes it impossible for the defendant to receive a fair trial. This assignment of error is without merit.

**Third Assignment of Error: The appellant's Fourteenth Amendment due process rights were violated due to multiple *Brady* violations by the State and reversal is therefore warranted.**

Wilhite argues that the state both failed to provide the defense with pertinent evidence and made an untimely disclosure of exculpatory evidence

material to his defense in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Specifically, Wilhite argues that the state's failure to provide him with a copy of Michele's recorded statement to the police and the late disclosure of P.W.'s Gingerbread House interview on the eve of trial were *Brady* violations.

Under the U.S. Supreme Court's decision in *Brady, supra*, the state must produce evidence that is favorable to the accused where it is material to guilt or punishment upon the defense's request. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *U.S. v. Bagley*, 470 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481 (1985); *State v. Rosiere*, 488 So. 2d 964 (La. 1986).

The state's constitutional obligation to disclose exculpatory evidence does not relieve the defense of its obligation to conduct its own investigation and prepare a defense for trial as the state is not obligated under *Brady* or its progeny to furnish defendant with information he already has or can obtain with reasonable diligence. *State v. Harper*, 10-0356 (La. 11/30/10), 53 So. 3d 1263; *State v. Kenner*, 05-1052 (La. 12/16/05), 917 So. 2d 1081, *citing U.S. v. Newman*, 849 F. 2d 156, 161 (5th Cir. 1988). It follows, therefore, "[t]here is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source, because in such cases there is really nothing for the government to disclose." *State v. Hobley*, 98-2460 (La. 12/15/99), 752 So. 2d 771, 786, *quoting Coe v. Bell*, 161 F. 3d 320, 344 (6th Cir. 1998), *cert. denied*, 531 U.S. 839, 121 S. Ct. 102, 148 L. Ed. 2d 61 (2000). A defendant shows no

14

entitlement to relief if the information was available to him through other means by the exercise of reasonable diligence. *State v. Green*, 16-0107 (La. 6/29/17), 225 So. 3d 1033.

The U.S. Fifth Circuit Court of Appeals explained in *U.S. v. Brown*, 628 F. 2d 471, 473 (5th Cir. 1980), that:

> Regardless of whether the request was specific or general, and regardless of whether the evidence was material or even exculpatory, when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim.
>
> The constitutional requirement of due process mandates that the defendant have a right to a fair trial. The prosecutor's duty not to suppress material information favorable to defendant flows from his office as representative of the Government's interest in and due process obligation to justice. Truth, justice, and the American way do not, however, require the Government to discover and develop the defendant's entire defense. ... In no way can information known and available to the defendant be said to have been suppressed by the Government.

(Citations and footnotes omitted.)

The state is not required to provide defense counsel with unlimited discovery of everything known by the prosecutor, nor is it required to make a complete and detailed accounting to the defense of all police investigatory work on a case. *Moore v. Illinois*, 408 U.S. 786, 92 S. Ct. 2562, 33 L. Ed. 2d 706 (1972).

We find that there were no *Brady* violations in this matter. The state's witness testified that the recording of Michele's interview, along with other interviews, were accidentally deleted due to a system malfunction. Despite the state's inability to produce a copy of Michele's interview, the information contained therein was available to Wilhite, as Michele testified on his behalf at trial. Similarly, while the state may not have provided a

copy of P.W.'s Gingerbread House interview until a few days before trial, P.W. testified at trial that he did not witness anything unusual with his father. Wilhite's defense counsel did not object to the late disclosure and made no motion for relief. It is clear that the late disclosure of P.W.'s interview did not prejudice Wilhite. We find this assignment of error is, likewise, without merit.

### ERROR PATENT

A review of the record reveals errors patent. First, the trial court failed to inform the defendant of the sex offender notification and registration requirements, as mandated by La. R.S. 15:543. Pursuant to La. R.S. 15:543, the trial court is required, using the form contained in La. R.S. 15:543.1, to notify a defendant convicted of a sex offense in writing of the registration and notification requirements. The statute further requires that an entry be made in the court minutes stating the written notification was provided.

Here, a review of the record and minutes reveals the trial court did not inform defendant, either orally or in writing, of the sex offender notification and registration requirements. As a result, remand is required with instructions to the trial court to provide the appropriate written notice to defendant of the sex offender registration requirements and to make an entry in the court minutes stating such notice was provided. La. R.S. 15:543; *State v. Vinson*, 54,580 (La. App. 2 Cir. 6/26/22), 342 So. 3d 469, *writ denied*, 22-01188 (La. 10/4/22), 347 So. 3d 888.

Second, the trial court advised Wilhite that he has two years from "the date the conviction becomes final" to seek post-conviction relief. La. C. Cr. P. art. 930.8 provides that a defendant has two years from the date his

16

"judgment of conviction and sentence become final" in which to seek post-conviction relief. Wilhite's case is being remanded for notification errors. At the time the correction is being made regarding the error patent discussed above, the trial court should correct the record and advise Wilhite that he has two years from the date his convictions *and* sentences become final to seek post-conviction relief.

Third, the trial court failed to order that Wilhite's sentence on count one in case number 236,043D, indecent behavior with a juvenile under 13, be served at hard labor, as required by La. R.S. 14:81(H)(2). However, because La. R.S. 14:81(H)(2) is a mandatory felony requiring any sentence to be served at hard labor, the error is harmless and self-correcting. *State v. Burns*, 53,250 (La. App. 2 Cir. 1/15/20), 290 So. 3d 721.

Finally, a review of the record reflects that there is discrepancy between the minutes and the transcript. The minutes in district court case numbers 236,043A, 236,043B, and 236,043C should be corrected to show that the verdict rendered on those cases was guilty as to count one and remove any reference to count two. Further, the minutes of the sentencing in district court case number 236,043D state that the sentence of count one was imposed with hard labor, when it was not. The minutes should be corrected to reflect this discrepancy.

### CONCLUSION

For the foregoing reasons, we affirm Stacey Glenn Wilhite's convictions and sentences. This matter is remanded to the trial court with instructions to provide defendant with written notice of the requirement that he register as a sex offender. The trial court is also instructed to advise defendant that he has two years from the date his convictions and sentences

17

become final to seek post-conviction relief and to order that the minutes be corrected.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED; REMANDED WITH INSTRUCTIONS.**