548 So.2d 57 (1989)
STATE of Louisiana, Appellee,
v.
Roderick B. JACKSON, Appellant.
No. CR 88-1042.
Court of Appeal of Louisiana, Third Circuit.
July 17, 1989.
*58 Michael J. Bonnette, Natchitoches, for defendant-appellant.
Michael Henry, Dist. Atty., Natchitoches, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and FORET, JJ.
FORET, Judge.
Roderick Jackson was charged by bill of information with attempted first degree murder, a violation of La.R.S. 14:30 and R.S. 14:27, and with armed robbery, a violation of La.R.S. 14:64. Jackson was found guilty as charged on both counts by a twelve-person jury and sentenced to serve fifty years at hard labor on the first count and ninety-nine years, without benefit of probation, parole, or suspension of sentence, on the armed robbery conviction. The sentences were directed to be served consecutively. Jackson seeks review of his conviction and sentences based on sixteen assignments of error, twelve of which have not been briefed and are therefore considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

FACTS
In the early morning hours of December 9, 1987, Russel Roge, an off-duty Natchitoches Parish sheriff's deputy, was working as a clerk in a convenience store in Campti, Louisiana. At approximately 2:30 A.M., an individual wearing a ski mask, gloves, and jacket entered the store, produced a snub nosed .32 revolver, and demanded the contents of the cash register. After Roge surrendered the contents of the register, the intruder positioned himself behind the counter and ordered Roge to empty the contents of a second register, a cigar box containing money, and the store safe. Roge was forced to kneel to remove the contents of the safe and, as he handed the offender a bag from the safe, he was shot in the face. Roge sought to push the offender away and was shot twice more in the right shoulder. Roge was shot a fourth time in the back as he attempted to crawl around the counter. Roge then successfully escaped through the store's entrance and attempted to hide behind the gas pumps as the offender shot an additional two shots in his direction. At that time, Roge produced his own weapon and began returning fire. The offender escaped around the rear of the building while Roge returned to the interior of the store and phoned for assistance.
Officers investigating the offense discovered a twenty dollar bill, a ski mask, two gloves, a jacket liner, and a jacket in a trail leading away from the store. During the investigation, the officers encountered another off-duty officer working security at a nearby business. This officer informed the investigators that he had observed an individual running from the driveway of a nearby residence at about 3:00 A.M., shortly after the offense. The individual then sat on the hood of a vehicle and motioned to the driver, who drove very slowly down the street.
A vehicle matching the description provided by this officer was stopped a short time later. The automobile was occupied by appellant, Roderick Jackson, and his girlfriend. Jackson's girlfriend testified at trial that Jackson woke her in the early morning hours and asked her to accompany him. According to her testimony, Jackson rode on the hood of her car while she drove and explained he was searching for a gun.
Jackson had been involved in a traffic accident in his girlfriend's car about one month earlier. During the investigation of that accident, an officer observed gloves and a ski mask in the vehicle. After Jackson's arrest, fibers combed from his hair were found to have identical characteristics as those of the mask abandoned at the robbery scene. The money taken from the robbery was discovered hidden under a home owned by Jackson's uncle, the same residence from which an individual was observed fleeing on the night of the robbery. Finally, footprints were found near the scene of the crime which matched the shoes Jackson was wearing when apprehended approximately forty-five minutes after the robbery.
During questioning by police officers, Jackson originally denied involvement in *59 the robbery; however, at trial, he testified and admitted participating in preparation of the offense but contended that another party committed the robbery. According to Jackson, the shooting was not part of the plan.

MERITS
Jackson contends that the trial judge committed reversible error by denying defense challenges for cause of two prospective jurors. According to Jackson, the responses of these persons during voir dire established personal relationships which reasonably led to the conclusion that the person would be influenced by the relationship in arriving at a verdict.
La.C.Cr.P. art. 797(3) provides, in pertinent part:
"The state or the defendant may challenge a juror for cause on the grounds that:
* * * * * *
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict; ..."
The mere relationship between a prospective juror and a party named in La.C.Cr.P. art. 797(3) is not in itself grounds for a challenge for cause. Where a challenge for cause is based on the juror's relationship with law enforcement officers, the situation calls for close scrutiny but does not automatically disqualify the potential juror. Only where the relationship leads to the reasonable conclusion that the juror would be influenced in arriving at a verdict should a challenge for cause be granted. State v. Comeaux, 514 So.2d 84 (La.1987); State v. Mills, 505 So.2d 933 (La.App. 2 Cir.1987), writ denied, 508 So.2d 65 (La.1987). The trial judge is afforded wide discretion in ruling on challenges for cause and a ruling should not be disturbed absent an abuse of discretion. State v. Brown, 496 So.2d 261 (La.1986).
Prospective juror Shirley Dunagan testified that she is employed at a printing shop across the street from the police department and that Roge, the victim, visited the shop several times since the incident. During these visits, Roge discussed his gunshot injuries and general physical condition but did not mention details of the robbery. According to Dunagan, she had no familiarity with the details of the robbery. Dunagan also stated that her son was a "friend" of Roge's. Dunagan stated that these relationships wouldn't cause impartiality or predisposition to judge in any manner. Dunagan expressed an ability to render judgment based upon the evidence presented at trial and unequivocably assured the trial judge she would be fair and impartial.
The responses by Mrs. Dunagan do not suggest circumstances which would lead to the reasonable conclusion that she would be influenced in arriving at a verdict. The fact that Roge entered the juror's place of business on occasion does not lead to an implication of partiality. The voir dire questioning did not elicit facts suggesting that the relationship between the juror's son and Roge would lead to juror bias. Under these circumstances, it does not appear that the trial judge abused his wide discretion in denying Jackson's challenge for cause.
A second prospective juror, Marion Rathburn, informed the court that her husband was a "second or third" cousin of Roge. Rathburn stated she had never personally met or spoken with Roge. According to Rathburn, her husband sees Roge "maybe once a year;" the pair are not close; Roge never attends family meetings and has never visited her home. Rathburn assured the court that she would feel no pressure from her husband. She stated that neither the relationship nor a not guilty vote would cause her any problems.
This prospective juror's relationship with the victim was remote and the circumstances did not indicate that she would be influenced in arriving at a just verdict. This Court has held under similar circumstances, where the spouse of a potential juror *60 was a first cousin of the victim, that denial of a challenge for cause is appropriate if the spouse's relationship to the cousin is such that it would be unreasonable to conclude that it would influence the juror in arriving at a verdict. State v. Richardson, 529 So.2d 1301 (La.App. 3 Cir.1988). Under the instant facts, the trial judge did not abuse his discretion in denying defense counsel's challenge for cause. Therefore, these assignments of error lack merit.
Jackson also argues that the trial judge failed to consider the mitigating factor of his youth in sentencing and failed to consider alternatives to confinement. Additionally, he alleges that the trial judge abused his discretion 1) by imposing the maximum sentences provided by law under the applicable statute and, 2) by ordering the sentences to be served consecutively.
Prior to reviewing the propriety of the sentences imposed, we note that an error patent exists on the face of the record. The applicable law is clearly stated in State v. Bradford, 514 So.2d 534, 535 (La.App. 3 Cir.1987), writ denied, 523 So.2d 226 (La.1988), cert. denied, ___ U.S. ___, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988), as follows:
"La.C.Cr.P. Art. 596 speaks of double jeopardy in terms of a second prosecution for the same offense, but its provisions also protect an accused from multiple punishment for the same criminal conduct. State v. Vaughn, 431 So.2d 763 (La.1983). Thus, further prosecution and conviction for attempted armed robbery, the enumerated felony, is precluded following a conviction of second degree murder. State v. Stewart, 400 So.2d 633 (La. 1981); State ex rel. Wikberg v. Henderson, 292 So.2d 505 (La.1974). In State v. Cotten, 438 So.2d 1156 (La.App. 1st Cir.1983), convictions of attempted first degree murder and attempted armed robbery, the enumerated felony, were held to subject the defendant to double punishment for the same offense, and one conviction was reversed and vacated. Similarly, in State v. Rogers, 462 So.2d 684 (La.App. 4th Cir.1984), multiple convictions and sentences at a single trial for the crimes of attempted first degree murder and the underlying felony, aggravated arson, were held to subject the defendant to double jeopardy."
In State v. Jones, 525 So.2d 1149 (La. App. 3 Cir.1988), this Court ruled that a defendant convicted of attempted first degree murder and armed robbery, the underlying enumerated felony, was improperly subjected to double jeopardy.
In cases where double jeopardy results in multiple punishment, the appropriate remedial procedure at the appellate level is to nullify and void the effect of the judgment as to the less severely punishable offense. State v. Jones, supra; State v. Bradford, supra. In this case, we vacate the conviction and sentence for attempted first degree murder. The conviction for armed robbery is affirmed. The propriety of the sentence imposed for the armed robbery is discussed below.
La.C.Cr.P. art. 894.1 provides criteria for consideration in determining whether a sentence is excessive and mandates that the trial "court shall state for the record ... the factual basis therefor in imposing sentence." At sentencing, the trial judge reviewed the facts of the instant offense and emphasized that Jackson began planning the crime just three months after his release from a twenty-eight-month prison term. The court stressed the injuries suffered by the victim and the violence exhibited by the offender in shooting the victim four times. The court found that Jackson would not respond favorably to probationary treatment and stated that there is a high risk that he will commit additional violent crimes in the future. He expressly found no mitigating factors, remarked that Jackson is a "dangerous individual" in need of correctional treatment and, in imposing the maximum penalty provided by law, stated that any lesser penalty would deprecate the severity of the offense.
The sentencing transcript exhibits compliance with statutory guidelines and demonstrates that the trial judge tailored the penalty to the offender and the offense. *61 Jackson accurately contends that maximum sentences are reserved for the most egregious and blameworthy offenders within a class. State v. Tehee, 425 So.2d 1251 (La. 1983). Jackson's actions demonstrate a propensity for violent criminal conduct. The crime committed was particularly heinous. Roge was shot four times, including once in the face from close range, even though he offered no resistance. Roge was shot a fourth time as he attempted to crawl to safety. Jackson exhibited extreme cruelty by following the fleeing Roge and attempting to shoot him two more times. An extended sentence which negates the opportunity to commit violent crimes in the future does not constitute a purposeless imposition of pain and suffering. State v. Donahue, 408 So.2d 1262 (La.1982). The trial judge has broad discretion in imposing sentence. We find that the facts of the instant case support the trial court's determination to impose the maximum permissible penalty such that there is no abuse of discretion.

CONCLUSION
Based upon the foregoing, the conviction and sentence for attempted first degree murder are vacated and the conviction and sentence for armed robbery are affirmed.
VACATED IN PART; AFFIRMED IN PART.