MAX N. TOBIAS, JR., Judge.
| iKM., a child, was adjudicated delinquent for the offense of simple assault pursuant to La. R.S. 14:38 and was committed to 90 days in the custody of the Department of Public Safety and Corrections; the execution of the commitment was suspended in favor of six months of active probation, to run concurrent with any other disposition. Additionally, the judge assessed a $55.00 court processing fee payable to the judicial expense fund of the juvenile court, in addition to a $150.00 probation fee. K.M. appeals. For the reasons that follow, we affirm the delinquency adjudication for the offense of simple assault and amend the fee assessment.

*868
Relevant Facts and Procedural Background

On the evening of 17 November 2013, K.M. was supposed to be in his room readying himself for school. Unbeknownst to his mother, Ms. McKay, and without her permission, he left home with his brother. Subsequently, the two boys were involved in a skirmish with two to three older individuals. A bystander who witnessed the encounter intervened by transporting the boys in his car to his home located on Pleasure Street in New Orleans, and then contacted the police. Thereafter, Silas Phipps, an officer with the New Orleans Police Department, ^responded to the call. After confirming that K.M. had sustained slight injuries and was a juvenile, Officer Phipps telephoned Ms. McKay, advised her of the altercation, and instructed her to come to the residence to pick up her sons.
Upon her arrival at the bystander’s residence, Ms. McKay initially expressed how upset she was with the boys because they had left home without her permission. She then admonished K.M. for showing disrespect for the police officer at the scene after which an argument ensued between her and K.M. K.M. was visibly upset himself. Ms. McKay then tried to get K.M. into her car and, continuing to be upset, K.M. ran away and proceeded down the street. Ms. McKay ran after K.M. on foot while Officer Phipps got into his car and followed them. K.M. made it only a half a block before the officer pulled up next to him, at which time K.M. stopped and returned to the police vehicle.
At some point during the exchange, with Ms. McKay approximately 10 to 15 feet away from K.M., K.M. yelled in her direction “something to the effect of, ‘Bitch, I’ll stab you in the face while you’re asleep.’ ” Officer Phipps then placed K.M. into his police vehicle and talked to Ms. McKay concerning what she wanted to do about the situation. According to Officer Phipps, Ms. McKay indicated to him that she was in fear of her safety and wanted to press charges against her son. At that time, Officer Phipps advised her that he would be transporting K.M. to juvenile facilities.
At the adjudication hearing, Officer Phipps testified that he “wantfed] to say that [Ms. McKay] did hear” her son shout the threat. In contradiction of the statements she made to Officer Phipps at the scene of the incident, Ms. McKay testified that she did not hear K.M. threaten her and did not believe that K.M. was about to stab or harm her. Moreover, on appeal, Ms. McKay contends that she was | ¡¡under the impression that K.M. was being transported to juvenile facilities “because he was ‘cut up so bad.’ ”[1]
At the close of the hearing, the judge found that the state proved beyond a reasonable doubt that K.M. had committed one count of simple assault, a violation of La. R.S. 14:38, adjudicated K.M. delinquent and committed him to 90 days in the custody of the Department of Public Safety and Corrections; the execution of the commitment was suspended in favor of six months of active probation, to run concurrent to any other disposition.[2] Additional *869 ly, the judge assessed a $55.00 court processing fee against the parent of K.M. payable to the judicial expense fund and a $150.00 probation fee.
This timely appeal followed.
I.
K.M.’s first assignment of error is twofold. In claiming that the juvenile court erred in finding that the state met its burden of proving beyond a reasonable |4doubt each and every element of the offense, K.M. contends that (a) the prior statement made by Ms. McKay to Officer Phipps on the night of the incident — ie., that she did not hear her son utter a threatening statement to harm her and that she was not in fear of receiving a battery from her son — was inadmissible for its assertive value as substantive evidence of his guilt, but rather, was admissible solely for impeachment purposes; and (b) absent Ms. McKay’s statement, the state lacks sufficient evidence to establish beyond a reasonable doubt that she was placed in reasonable apprehension of receiving a battery.
The state claims that under the 2004 amendment to La. C.E. art. 801 D(l)(a), Ms. McKay’s statement was admissible for its substantive and assertive value as a prior inconsistent statement and that the corroborating testimony of Officer Phipps supports the court’s admissibility finding and its consideration of her prior statement as a basis for adjudicating K.M. delinquent. The state further argues the court did not err in adjudicating K.M. delinquent of simple assault based on the evidence presented.

Admissibility of Ms. McKay’s Prior Statement

Pursuant to La. C.E. art. 802, an out-of-court statement is generally inadmissible as hearsay. Under La. C.E. art. 607 D(2), however, evidence of the prior out-of-court statement made by Ms. McKay to Officer Phipps was admissible to impeach and attack her credibility, since she denied at trial having previously stated to Officer Phipps at the scene that she was in fear of her safety. Article 607 D(2) provides, in pertinent part:
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting |sthe witness’ testimony, is admissible when offered solely to attack the credibility of a witness....
While K.M. correctly alludes to this general principle that when a non-party witness’ credibility was attacked through pri- or inconsistent statements, such evidence was generally admissible for impeachment purposes only and not for its assertive value as substantive evidence of guilt under La. C.E. art. 607 D(2), he fails to acknowledge the rule’s exception pertaining to prior inconsistent statements that can be classified as non-hearsay; that is, statements that can “be used to divulge *870 the content of the prior statement for the purpose of inviting the jury to believe the content of the statement.” State v. Cousin, 96-2973 (La.4/14/98), 710 So.2d 1065, 1069-1070.
Prior to 2004, La. C.E. art. 801 D(l)(a) provided:
D. Statements which are not hearsay. A statement is not hearsay if:
(1) Prior statement by witness. The de-clarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:
(a) Inconsistent with his testimony, and was given under oath subject to the penalty of perjury at the accused’s preliminary examination or the accused’s prior trial and the witness was subject to cross-examination by the accused;
[[Image here]]
Under this narrow pre-2004 definition, Ms. McKay’s prior statement would not have qualified as “not hearsay,” since she was not under oath and subject to cross-examination when she made it to the officer at the scene. In 2004, however, the legislature amended La. C.E. art. 801 D(l)(a), significantly expanding its definition to provide that a prior statement by a witness is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement is:
|fi(a) In a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness’ attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement; ... [3]
Thus, pursuant to the pre-2004 version of La. C.E. art. 801 D(l)(a), prior inconsistent statements of a witness had to be given under oath at the accused’s preliminary examination or prior to trial, and the witness had to have been subject to cross-examination at that time by the accused in order for such prior inconsistent statements to be considered non-hearsay. The amended version of article 801 D(l)(a), however, “is substantially broader than its predecessor, and renders most prior inconsistent statements admissible for their substantive or assertive value as well as their impeachment value in criminal cases if the proper foundation is established.” See Authors’ Note 3, Pugh, Force, Rault, Triehe, Handbook on Louisiana Evidence Law (2011).
In the instant case, we find that K.M. erroneously relies on jurisprudence existing prior to the 2004 amendment to support his position that Ms. McKay’s statement made to Officer Phipps at the scene is inadmissible for its substantive or assertive value. In State v. Wells, 10-1338, p. 6 (La.App. 4 Cir. 3/30/11), 64 So.3d 303, 307, citing State v. Rankin, 42,412 (La.App. 2 Cir. 9/19/07), 965 So.2d 946,[4] |7this court *871 recognized that the 2004 amendment to La. C.E. art. 801 D(l)(a) made a witness’ prior inconsistent statement in a criminal case non-hearsay. Since they are non-hearsay, such statements may be used for their assertive value upon laying the proper foundation.
In the case sub jucLice, we find that Ms. McKay’s statement to Officer Phipps on the night of the incident that she was in fear of her safety qualifies as non-hearsay under article 801 D(l)(a). Ms. McKay testified at K.M.’s adjudication hearing and was cross-examined regarding her prior statement to Officer Phipps at which time she denied hearing a threat or being in apprehension of being stabbed by K.M. Then, Officer Phipps testified at the hearing confirming that K.M. made a statement threatening to stab his mother, that he believed Ms. McKay heard the threat, and that subsequent to the threat being made, Ms. McKay stated to him that she was in fear of her safety. We find Officer Phipps’ testimony corroborates Ms. McKay’s apprehension of receiving a battery on the night of the incident. Accordingly, we hold that the statement was admissible not only to attack Ms. McKay’s credibility, but also for its assertive value as substantive evidence of KM.’s guilt of committing simple assault.
Sufficiency of the Evidence — Proof Beyond a Reasonable Doubt
We must now decide whether the evidence presented by the state, ie. the prior inconsistent statement made by Ms. McKay to Officer Phipps, was sufficient to sustain the adjudication of K.M. as delinquent of simple assault beyond a reasonable doubt. When the state charges a child with a delinquent act, it has the burden of proving each element of the offense beyond a reasonable doubt. La. IsCh.C. art. 888. On appeal, the applicable standard of review is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard of review applies to juvenile proceedings in which a child is adjudicated delinquent. State in the Interest of AG., 630 So.2d 909, 910 (La.App. 4th Cir.1993). In juvenile proceedings, the scope of this court’s review extends to both law and facts. La. Const. art. V, § 10(B); State in the Interest of D.R., 10-0405, p. 5 (La.App. 4 Cir. 10/13/10), 50 So.3d 927, 930.
The Jackson standard of review incorporated in La.C.Cr.P. art. 821[5] is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt.[6] The testimony of one witness is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency. State v. *872 Dorsey, 10-0216, p. 43 (La.9/7/11), 74 So.3d 603, 634. In the absence of internal contradiction or irreconcilable conflict with physical evidence, even a single witness’s testimony if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Robinson, 02-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79.
IsAs a court of review, we recognize that the judge observed the conduct and demeanor of the witnesses and was in the best position to determine the credibility and weigh the evidence. Thus, we grant great deference to the court’s factual findings, credibility determinations, and assessment of witness testimony. State in the Interest of A.H., 10-1673, p. 3 (La.App. 4 Cir. 4/20/11), 65 So.3d 679, 682. Accordingly, a factual finding made by a trial court in a juvenile adjudication proceeding may not be disturbed by an appellate court unless the record evidence as a whole does not furnish a basis for it, or it is clearly wrong.[7] See State ex rel. C.N., 11-0074, p. 5 (La.App. 4 Cir. 6/29/11), 69 So.3d 711, 714. In sum, we apply the “clearly wrong-manifest error” standard of review to determine whether sufficient evidence exists to satisfy the standard of proof beyond a reasonable doubt.
La. R.S. 14:36 defines the offense of assault as “an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery.” In order to sustain the offense of “assault,” the state must prove beyond a reasonable doubt: (1) the intent-to-scare mental element (general intent); (2) conduct by the accused of the sort to arouse a reasonable apprehension of bodily harm; and, (3) the resulting apprehension on the part of the victim. State v. Tatom, 463 So.2d 35, 37 (La.App. 5th Cir.1985); State v. Roebuck, 543 So.2d 573, 574 (La.App. 4th Cir.1989).
The only two witnesses to testify at KM.’s adjudication hearing were Ms. McKay and Officer Phipps. While their testimony is in accord as to K.M.’s Inactions up to the time he took off running away from his mother with her following him on foot while Officer Phipps followed in the patrol car, the trial testimony conflicts as to what transpired thereafter. Officer Phipps testified that, as K.M. ran away, he verbally shouted a threat to his mother “something to the effect” that he would stab her in her face while she was asleep. Officer Phipps explained that at the time the threat was made, Ms. McKay was only 10 to 15 feet away from K.M. and that, in his opinion, she did hear the threat, and that, afterwards, Ms. McKay did state to him that she was in fear of her safety and wanted to press charges against her son. Contrariwise, Ms. McKay testified that she did not hear any threats made by K.M. and denied that she was fearful that K.M. would harm her.
The trier of fact, in this case the judge, is charged with making credibility determinations. Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the fact finder. State in the Interest of T.C., 09-1669, p. 6 (La.App. 4 Cir. 2/16/11), 60 So.3d 1260, 1263. Moreover, when conflicting testimony about factual matters exits, the resolution of which depends upon a determination of the relative credibility of the witnesses, the matter is a question of weight of the evidence, not its sufficiency. State v. Jones, 537 So.2d *873 1244, 1249 (La.App. 4th Cir.1989); see also Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. Id A trier of fact’s determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence. State in the Interest of T.C., 09-1669 at p. 6, 60 So.3d at 1263.
In the instant matter, the judge heard the conflicting testimony of the two witnesses and found, under the circumstances, Officer Phipps’ testimony to be |1Tmore credible. It was within the juvenile judge’s purview to make such a determination, especially in light of the fact that Ms. McKay, the victim, is the mother of K.M. This is exactly the type of situation envisioned by the Legislature when amending La. C.E. art. 801 D(l)(a). See Rankin, 42,412 at p. 7, 965 So.2d at 950-51. The judge further determined that the testimony of Officer Phipps was sufficient to adjudicate K.M. delinquent of simple assault. Given that the testimony of one witness is usually sufficient to support a verdict, we will not disturb that finding. Dorsey, 10-0216 at p. 43, 74 So.3d at 634.
Any rational trier of fact, viewing the evidence regarding the simple assault in the light most favorable to the state, could have found, proven beyond a reasonable doubt, the essential elements of simple assault committed by K.M. against his mother. Additionally, after undertaking our state’s constitutionally mandated review of the law and facts in a juvenile proceeding, we find no manifest error by the juvenile court in its adjudication of delinquency based on simple assault. Accordingly, KM.’s first assignment of error lacks merit.
II.
By his second assignment of error, K.M. argues that he was denied due process when the juvenile judge assessed a “court processing fee” payable to the judicial expense fund, which fee is not only in excess than that allowed by law, but gives the juvenile judge a financial interest in the case creating the appearance of bias.
The authority for a juvenile judge to assess a fee transmitted to the judicial expense fund is contained in La. R.S. 13:1595.2, which states, in pertinent part:
A. In all delinquency and children in need of supervision cases over which the Orleans Parish Juvenile Court has jurisdiction, there shall be taxed |12as costs against every juvenile who is adjudicated delinquent, admits to allegations contained in the petition, or enters into an informal adjudication the sum of fifty dollars, which shall be transmitted to the judicial administrator of the Orleans Parish Juvenile Court for further disposition in accordance herewith.
B. The judicial administrator shall place all sums collected or received under this Section in a separate account to be designated as the judicial expense fund for the Orleans Parish Juvenile Court. The judges of the court shall cause to be conducted annually an audit of the fund and the books and account relating thereto shall file the same with the office of the legislative auditor where it shall be available for public inspection. [Emphasis supplied.]
In the instant matter, K.M. correctly avers — and the state concedes — that the $55.00 fee assessed by the juvenile judge as a result of K.M. being adjudicated delinquent exceeds the amount mandated by statute. As such, we find that the aspect of K.M.’s second assignment of error has *874 merit. We, therefore, amend the $55.00 fee assessment and reduce it to $50.00 in accordance with La. R.S. 13:1595.2(A).
The next part of K-M.’s second assignment of error is that the practice of depositing fees assessed by the juvenile court into the judicial expense fund deprives him of his right to due process and is, thus, unconstitutional, because the trial judge, as a financial officer of the court’s judicial expense fund, bears a perceived financial interest in the outcome of a delinquency adjudication. Because the constitutionality of La. R.S. 13:1595.2 B is not properly before us, we pretermit any discussion of this issue. See State in the Interest of L.V., 13-1584, p. 3 (La.App. 4 Cir. 4/9/14), 140 So.3d 187,188.
{^CONCLUSION
For the foregoing reasons, we affirm the adjudication of K.M. for the offense of simple assault and amend the fee assessment.
AMENDED; AFFIRMED AS AMENDED.

. In the transcript of the hearing, Ms. McKay testified that when she arrived at the bystander’s home, K.M. "cut up so bad” (i.e., misbehaving), not that he "was cut up so bad” as set forth in the K.M.’s brief on appeal. Nonetheless, Ms. McKay denies that she wanted to press charges or that her desire to press charges was why Officer Phipps was transporting K.M. to juvenile facilities.

. The suspension of KM.’s 90-day commitment was subject to the following special conditions:
*869 1. The juvenile must enroll in and attend school every day, present no problems at home or school, receive no suspensions and forward copies of all report cards received to the Court.
2. The juvenile must have no further violations of the law.
3. The juvenile must have no drugs, alcohol or weapons in his possession.
4. The juvenile is to abide by a 6:00 p.m. curfew on weekdays and a 7:00 p.m. curfew on weekends.
5. The juvenile is not to associate with anyone his mother disapproves of.
6. The juvenile is to cooperate and complete the conditions of OJJ [Louisiana Department of Public Safety and Corrections, Youth Service, Office of Juvenile Justice], [Emphasis in original.]

. La. C.E. art. 801 D(l)(a), as quoted above, was enacted by Acts 2004, No. 694, § 1, and was in effect at the time of K.M.’s adjudication hearing.

. In Rankin, the court opined that the amendment appears to have been intended to address cases of domestic violence "which are among the most fertile grounds for non-cooperative non party witnesses.” 42,412 at p. 7, 965 So.2d at 950-51. See Beloof and Shapiro, Let The Truth Be Told: Proposed Hearsay Exceptions to Admit Domestic Violence Victims’ Out of Court Statement as Substantive Evidence, 11 Colum. J. Gender & L. 1 (2002). Thus, since the 2004 amendment, while prior inconsistent statements are admissible for purposes of attacking a witness’ credibility under La. C.E. art. 607 D(2), they are also admissible for their assertive value pursuant to La. C.E. art. 801 D(l)(a), provided they *871 meet the broad definition of non-hearsay statements.

. Pursuant to La. Ch.C. art 104, "[w]here procedures are not provided in this Code, or otherwise by law, the court shall proceed in accordance with ... [t]he Code of Criminal Procedure in a delinquency proceeding.

. A review under the Jackson standard is made on "all of the evidence.” Jackson, 443 U.S. at 319,"99 S.Ct. 2781. See also Lockhart v. Nelson, 488 U.S. 33, 39-41, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)(all evidence includes evidence erroneously admitted). Under this standard, inadmissible evidence erroneously admitted is considered in a challenge to the sufficiency of evidence even if, had it been properly excluded, the remaining evidence would have been insufficient for a finding of guilt beyond a reasonable doubt. State v. Hearold, 603 So.2d 731, 734 (La.1992).

. This "clearly wrong” standard is broader than the constitutional minimum standard of review granted by Jackson, which standard must be satisfied for either an adult conviction or a juvenile adjudication in order to fulfill the Due Process requirement of the Fourth Amendment. State in the Interest of D.R., 10-0405, p. 14, 50 So.3d at 935-36.